1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10   CRISTINA GARCIA                    )   CASE NO. CV 13-06029 MMM (AGRx)
                                        )
11               Plaintiff,             )
                                        )
12       vs.                            )   ORDER GRANTING DEFENDANTS'
                                        )   MOTIONS TO DISMISS
13   WELLS FARGO BANK, N.A.; SELECT     )
     PORTFOLIO SERVICING, INC.; BANK    )
14   OF AMERICA, N.A. AND DOES 1 TO     )
     100, INCLUSIVE,                    )
15                                      )
                 Defendants.            )
16                                      )
                                        )
17   _____ )

18
          On June 26, 2013, Cristina Garcia filed this action in Los Angeles Superior Court against
19
     Wells Fargo Bank, N.A. ("Wells Fargo"), Select Portfolio Servicing, Inc. ("SPS"), and certain
20
     fictitious defendants.[1]  On August 16, 2013, Wells Fargo and SPS removed the action to this
21
     court, invoking the court's jurisdiction under 28 U.S.C. § 1332.[2]  On August 23, 2013, Wells
22

23

24

25
     _____
26   [1]Notice of Removal, Docket No. 1 (Aug. 16, 2013), Exh. 2 ("Complaint").

27       [2]The removal was timely because Garcia did not serve the summons and complaint on SPS
28   until July 18, 2013.  (*Id.*, ¶ 1.)

Fargo and SPS filed a motion to dismiss,[3] which the court granted on November 26, 2013.[4]  On January 10, 2014, Garcia filed a second amended complaint, adding Bank of America, N.A. ("Bank of America") as a defendant.[5]  Wells Fargo and SPS filed a motion to dismiss on January 24, 2014,[6] and Bank of America filed its own motion to dismiss on February 4, 2014.[7]  Garcia opposes both motions.[8]

# I.  BACKGROUND

### A.      Defendants' Requests for Judicial Notice

Defendants request that the court take judicial notice of various documents related to this action: (1) a deed of trust on Garcia's property recorded November 1, 2006;[9] (2) a substitution of trustee and assignment of deed of trust, recorded June 11, 2010;[10] (3) a notice of default and election to sell under deed of trust, recorded June 3, 2010;[11] (4) a notice of trustee's sale, recorded

---

[3]Motion to Dismiss, Docket No. 7 (Aug. 23, 2013).

[4]Order Granting Defendants' Motion to Dismiss, Docket No. 19 (Nov. 26, 2013).

[5]Second Amended Complaint ("SAC"), Docket No. 32 (Jan. 10, 2014); see also In Chambers Order, Docket No. 31 (Jan. 3, 2014).

[6]Motion to Dismiss Case filed by Defendants Select Portfolio Servicing, Inc., Wells Fargo Bank NA ("Wells MTD"), Docket No. 34 (Jan. 24, 2014).

[7]Motion to Dismiss Case filed by Defendant Bank of America ("BofA MTD"), Docket No. 37 (Feb. 4, 2014).

[8]Opposition to Defendants' Wells Fargo Bank & Select Portfolio Service, Inc. Motion to Dismiss ("Wells Opp."), Docket No. 44 (Mar. 19, 2014); Opposition to Defendant's Bank of America, N.A. Motion to Dismiss ("BofA Opp."), Docket No. 45 (Mar. 19, 2014).

[9]Request for Judicial Notice ("Wells RJN"), Docket No. 34-1 (Jan. 24, 2014), Exh. A; Request for Judicial Notice ("BofA RJN"), Docket No. 38 (Feb. 4, 2014), Exh. A.

[10]Wells RJN, Exh. B; BofA RJN, Exh. B.

[11]BofA RJN, Exh. C.

September 20, 2010;[12] (5) a notice of rescission of declaration of default, recorded April 19, 2012;[13] (6) a substitution of trustee recorded June 18, 2012;[14] (7) a notice of default and election to sell under deed of trust recorded June 18, 2012;[15] (8) a notice of trustee's sale recorded September 21, 2012;[16] (9) a trustee's deed upon sale recorded January 17, 2013;[17] and (10) a promissory note.[18]

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . . A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not

---

[12]BofA RJN, Exh. D.

[13]BofA RJN, Exh. E.

[14]Wells RJN, Exh. C; BofA RJN, Exh. F.

[15]Wells RJN, Exh. D; BofA RJN, Exh. G.

[16]Wells RJN, Exh. E; BofA RJN, Exh. H.

[17]Wells RJN, Exh. F; BofA RJN, Exh. I.

[18]BofA, Exh. J.

reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Courts have thus held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).

The first nine documents attached to defendants' requests for judicial notice were recorded in the Los Angeles County Recorder's Office, are time and date stamped, and have a record number.  Garcia objects to defendants' requests "to the extent [defendants are] attempting to obtain a determination that no valid loan modification was entered into."[19]  She also objects to the notice of default and notice of trustee's sale recorded in 2012 on the grounds that they are inconsistent with the terms of her loan modification agreement; that she did not default on her loan; and that the notices are therefore void and invalid.[20]

Courts routinely take judicial notice of such documents as public filings.  See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.  As such, this court may consider these foreclosure documents"); *Distor*

---

[19]Wells Opp. at 10; Opp. BofA Opp. at 11.

[20]*Id.*

*v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).  The court will therefore take judicial notice of the documents.  Because none of the first through sixth and ninth documents affects a determination concerning the validity of the purported loan modification agreement, and because that is Garcia's sole objection, the court will consider those documents for all purposes.  Garcia contends the seventh and eight documents – the notice of default and notice of trustee's sale recorded in 2012 – contradict the terms of her loan modification and are therefore void.  Because the facts contained in these documents are subject to reasonable dispute, the court will take judicial notice of the documents, but not of the facts contained therein.  See *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding district court erred by taking judicial notice of disputed facts stated in public records).

Bank of America also asks that the court judicially notice a promissory note that appears to have been signed by Garcia and her husband, Bernardo Garcia, Jr., because it is referenced in and forms the basis of Garcia's complaint.[21]  The document is not appropriate for judicial notice as it is not publicly recorded and the facts it contains could be subject to reasonable dispute.  The court may, however, consider the note under the incorporation by reference doctrine.  The incorporation by reference doctrine "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings.'"  *In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).  See also *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly

[21]BofA RJN, Exh. J.

allege the contents of that document in the complaint"); *Branch*, 14 F.3d at 453 (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity).   Garcia repeatedly references the loan in her complaint, and her contention that the loan was modified is central to her claims.   While she objects to the court's consideration of the note, she does not dispute its authenticity.   Accordingly, the court will consider the promissory note under the incorporation by reference doctrine. See *Pajarillo v. Bank of America*, No. 10CV937 DMS (JMA), 2010 WL 4392551, *1 n. 1 (S.D. Cal. Oct. 28, 2010) (considering an adjustable rate note under the incorporation by reference doctrine); *Yagman v. JP Morgan Chase Bank, N.A.*, No. 2:11–cv–8427–ODW (MANx), 2012 WL 999835, *1 n. 1 (C.D. Cal. Mar. 19, 2012) (considering plaintiff's promissory note under the incorporation by reference doctrine); *Patito v. Countrywide Bank, FSB*, No. C 09-04843 JF (HRL), 2010 WL 690131, *1 n. 1 (N.D. Cal. Feb. 23, 2010) (same).

### B.   Factual Background

Garcia resides at a residential property located in Monterey Park, California.[22]   In 2006, she and her husband, Bernardo Garcia, Jr., obtained a $520,000 loan from SCME Mortgage Bankers, Inc. ("SCME").[23]   A deed of trust securing the loan was recorded on November 1, 2006, which identified SCME as the lender, Stewart Title of San Diego as the trustee, and MERS as SCME's nominee and beneficiary.   It listed Bernardo and Cristina Garcia as trustors and joint tenants.[24]   On June 11, 2010, a substitution of trustee and assignment of deed of trust were recorded, reflecting that MERS had substituted ReconTrust Company, N.A. as trustee and assigned all beneficial interest in the loan to Wells Fargo Bank, N.A., as Trustee for Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1.[25]   On June 3,

---

[22]SAC, ¶ 2. Garcia's opposition states that although the home has been sold at foreclosure, she continues to fight defendants' efforts to evict her.  (Wells Opp. at 4, 8; BofA Opp. at 4, 9.)

[23]Wells RJN, Exh. A; BofA RJN, Exhs. A, J.

[24]Wells RJN, Exh. A; BofA RJN, Exh. A.

[25]Wells RJN, Exh. B; BofA RJN, Exh. B.

2010, a notice of default and election to sell under deed of trust was recorded, stating that the Garcias were $67,731.90 in arrears on their loan payments as of June 2, 2010.[26]   A notice of trustee's sale was recorded on September 20, 2010,[27] but later rescinded on April 17, 2012.[28]

Garcia contends that Bank of America served as the original servicer of the loan, and that it was replaced by SPS.[29] She asserts that beginning in 2010, she began to negotiate a temporary, and subsequently a permanent, loan modification agreement, which she finalized with Bank of America on November 26, 2011.[30]   Garcia allegedly made the first two payments under the agreement in a timely fashion.  Nonetheless, in January 2012, SPS, which had succeeded Bank of America as servicer, purportedly refused to accept further payments and returned her last payment.[31] Defendants purportedly refused to acknowledge the existence of the loan modification agreement.[32]   On June 18, 2012, a substitution of trustee was recorded that substituted Quality Loan Services Corporation ("QLS") as trustee.[33]   That same day, QLS recorded a notice of default, which stated that the Garcias were $14,143.28 in arrears on their loan payments as of June 14, 2012.[34]   On September 21, 2012, a notice of trustee's sale was recorded.[35]   QLS sold the

---

[26]BofA RJN, Exh. C.

[27]*Id.*, Exh. D.

[28]*Id.*, Exh. E.

[29]SAC, ¶ 3.

[30]*Id.*, ¶¶ 3, 32, 37; *id.*, Exh. 1.

[31]*Id.*, ¶¶ 3, 27, 33.

[32]*Id.*, ¶ 33.

[33]Wells RJN, Exh. C; BofA RJN, Exh. F.

[34]Wells RJN, Exh. D; BofA RJN, Exh. G.

[35]Wells RJN, Exh. E; BofA RJN, Exh. H.  As discussed, the court takes judicial notice of the fact that the notice of default and notice of trustee's sale were recorded, but not of the truth of the facts stated in the documents.

property at public auction to Wells Fargo on January 4, 2013.[36]

Garcia asserts that throughout her interactions with defendants, they were deliberately difficult to work with, disorganized, dishonest and unhelpful; she contends defendants adopted this attitude to frustrate her efforts to modify and make payments on the loan.[37]  Throughout the modification process, defendants allegedly knew that she was suffering from cancer and that her husband was very ill as well.[38]

Garcia alleges claims against all defendants for violation of California's Unfair Competition Law, Business & Professions Code § 17200 et seq.; negligence; intentional infliction of emotional distress; and breach of written contract.[39]  She alleges a fifth claim for promissory estoppel against Bank of America only.[40]

## II.  DISCUSSION

### A.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).  It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule

---

[36]Wells RJN, Exh. F; BofA RJN, Exh. I.

[37]SAC, ¶¶ 15, 27.

[38]*Id.*, ¶ 28.

[39]*Id.*, ¶¶ 13-35.

[40]*Id.*, ¶¶ 36-41.

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).  Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

As the Ninth Circuit has explained: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Whether the Complaint Should be Dismissed for Failure to Name Bernardo Garcia, Jr. As a Necessary Party Under Rule 19

As a threshold matter, Bank of America argues that the complaint should be dismissed in its entirety because plaintiff has not joined her husband, Bernardo Garcia, Jr., a purportedly

indispensable party.[41]  As noted, the judicially noticed documents indicate that the Garcias were co-owners of the property, holding title as joint tenants.  Bernardo Garcia, Jr. is not a party to this action, and plaintiff does not alleged that he lacks a present interest in the property.  Bank of America thus seeks dismissal under Rule 12(b)(7) of the Federal Rules of Civil Procedure, which provides a defense to claims when a plaintiff has failed to join a necessary party under Rule 19.  FED.R.CIV.PROC. 12(b)(7).

"Rule 19 of the Federal Rules of Civil Procedure governs compulsory joinder in federal district courts."  *Walter v. Drayson*, 496 F.Supp.2d 1162, 1172 (D. Haw. 2007) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005), cert. denied, 546 U.S. 1150 (2006)).  Rule 19(a) states, in relevant part:

> "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."
> FED.R.CIV.PROC. 19(a)(1).

If it is not feasible to join a party found to be "necessary" under Rule 19(a), the court must consider whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Stated differently, the court must determine whether the necessary party is also "indispensable."  FED.R.CIV.PROC. 19(b); see also, e.g., *Estate of Burkhart v. United States*, No. C 07-5467 PJH, 2008 WL 4067429, *6 (N.D. Cal. Aug. 26, 2008) ("If a party is 'necessary' and cannot be joined, 'the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed,'"

---

[41]BofA MTD at 5.

quoting FED.R.CIV.PROC. 19(b)).

In making this determination, courts must consider:

"(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

Rule 19 thus requires "three successive inquiries": (1) whether a nonparty is "necessary" and should be joined under Rule 19(a); (2) if so, whether it is feasible to order the absent party joined; and (3) if joinder is not feasible, whether the case can proceed without the party, or whether instead the party is "indispensable" such that the action must be dismissed. See, e.g., *Walter*, 496 F.Supp.2d at 1173; see also, e.g., *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n. 5 (9th Cir. 2004) ("The terms 'necessary' and 'indispensable' are terms of art in Rule 19 jurisprudence: 'Necessary' refers to a party who should be '[j]oined if [f]easible.' . . . 'Indispensable' refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed" (citations omitted)). The Ninth Circuit has cautioned that the Rule 19 inquiry "is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agricultural Improvement and Power District*, 276 F.3d 1150, 1154 (9th Cir. 2002).

A party may move to dismiss a case for failure to join a necessary and indispensable party under Rule 19. FED.R.CIV.PROC. 12(b)(7); see also, e.g., *Contractors Bonding and Insurance Company v. American Lighting Industry, Inc.*, No. CV 08-813-VAP (JWJx), 2008 WL 4447680, *2 (C.D. Cal. Oct. 1, 2008); *Brosnahan v. Pozgay*, No. CV 06-2195 DMS (NLS), 2007 WL 173969, *2 (S.D. Cal. Jan. 17, 2007). When seeking dismissal for nonjoinder of a necessary and indispensable party under Rules 12(b)(7) and 19, the moving party bears the burden of adducing evidence in support of the motion. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Contractors Bonding and Insurance Company*, 2008 WL 4447680 at *2 (citing *Citizen*

1    *Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994)).

2           As evidence supporting its argument, Bank of America cites the deed of trust and

3    promissory note; these documents clearly indicate that Bernardo Garcia, Jr. and plaintiff took title

4    to the property as joint tenants and that both executed the deed of trust securing the $520,000 loan

5    from SCME.[42]  Because the exhibits clearly reflect that Bernardo Garcia, Jr. has the same interest

6    in the property as Cristina Garcia, the validity of the foreclosure sale will affect his rights as well.

7    Bank of America correctly notes that to proceed without Bernardo Garcia, Jr. would leave it

8    "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

9    by reason of the claimed interest."[43]

10          While the necessity of a party's joinder is not "judged by any prescribed formula," one

11   factor given weight is whether there would be "unnecessary and repetitive litigation" absent

12   joinder.  *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (citing

13   the Advisory Committee Notes to Rule 19, which state that "[t]he interests that are being furthered

14   here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on

15   the same essential subject matter"); *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion,*

16   *S.A.*, 125 F.Supp.2d 1008, 1011 (N.D. Cal. 2000) ("th[e Rule 19(a)] standard is met when failure

17   to join will lead to separate and redundant actions"); *Palestini v. General Dynamics Corp.*, 193

18   F.R.D. 654, 658 (S.D. Cal. 2000) (same); see also *McCarty v. Johnson & Johnson*, No.

19   1:10-CV-00350 OWW-DLB, 2010 WL 2629913, *8 (E.D. Cal. Jun. 29, 2010) ("In general, Rule

20   19 is satisfied when joinder would prevent redundant litigation").

21          To avoid the burden of unnecessary and repetitive litigation, Bernardo Garcia, Jr. must be

22   joined as a plaintiff in this action.  Given that he appears to have been a co-owner of the property

23   and Garcia's husband, joining him should be feasible.  The court therefore dismisses the complaint

24   with leave to amend.  Should plaintiff choose to amend, the court directs her to file an amended

25   complaint that names Bernardo Garcia, Jr. as an additional plaintiff, or includes allegations as to

26   _____

27          [42]Wells RJN, Exh. A; BofA RJN, Exhs. A, J.

28          [43]BofA MTD at 5.

1    why it is not feasible to do so.

2        **C.    Whether Garcia States a Claim for Breach of Contract**

3        Garcia alleges that defendants are liable for breach of contract because they failed to honor

4    her permanent loan modification agreement.   To state a breach of contract claim, a party must

5    show: (1) the existence of a contract; (2) the party's performance under that contract or an excuse

6    for nonperformance; (3) the defendant's breach; and (4) resulting damages.   *Alvarado v. Aurora*

7    *Loan Services, LLC*, No. SACV 12–0524 DOC (JPRx), 2012 WL 4475330, *4 (C.D. Cal. Sept.

8    20, 2012) (citing *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006)).

9        "California law requires four elements to form a valid contract: 1) parties capable of

10   contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet*

11   *Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1193 (C.D. Cal. 2007)

12   (citing CAL. CIV. CODE §§ 1550, 1565).   See also RESTATEMENT (SECOND) OF CONTRACTS § 17

13   ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual

14   assent to the exchange and a consideration").   "Contract formation . . . requires that the parties[ ]

15   reach mutual assent or consent on definite or complete terms. . . .   Mutual assent is accomplished

16   when a specific offer is communicated to the offeree, and an acceptance is subsequently

17   communicated to the offeror." *Netbula, LLC v. BindView Development Corp.*, 516 F.Supp.2d

18   1137, 1155 (N.D. Cal. 2007) (citations omitted).   "[I]f the action is based on alleged breach of

19   a written contract, the relevant terms must be alleged in the body of the complaint or a copy of

20   the written agreement must be attached and incorporated by reference." *Harris v. Rudin, Richman*

21   *& Appel*, 74 Cal.App.4th 299, 307 (1999); see also *McKell,* 142 Cal.App.4th at 1489.

22        Under California law, "[a] contract coming within the statute of frauds is invalid unless it

23   is memorialized by a writing subscribed by the party to be charged or by the party's agent."

24   *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 552 (2008) (citing CAL.

25   CIV. CODE § 1624).   "A mortgage or deed of trust . . . comes within the statute of frauds." *Id.*

26   (citing CAL. CIV. CODE § 2922 ("A mortgage can be created, renewed, or extended, only by

27   writing, executed with the formalities required in the case of a grant of real property")).   Because

28   "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the

statute of frauds," an agreement to modify a mortgage is subject to the statute of frauds. *Id.* at 553 (citing CAL. CIV. CODE § 1698(a) and *Collins v. Marvel Land Co.*, 13 Cal.App.3d 34, 43 (1970)).   This applies both to agreements altering a borrower's payment schedule under an existing mortgage and agreements altering the lender's ability to foreclose in the event of the borrower's default. *Id.*

Garcia contends Bank of America entered into a permanent loan modification agreement with her on November 26, 2011.[44]  She asserts that the agreement was drafted by Bank of America and Wells Fargo, as trustee, and later assumed by SPS.[45]  Garcia states that under the agreement, the loan was to be deemed current – and no trustee's sale was to occur – so long as she made the scheduled payments.[46]  She contends that although she made the first and second payments under the agreement, in January 2012, SPS and Wells Fargo refused to accept further payments and returned her last payment.  In January 2013, they conducted a trustee's sale.[47] Garcia attaches a copy of the purported agreement to her complaint.[48]

As defendants note, however, the agreement is not signed by Bank of America.[49]  They contend that the statute of frauds therefore renders the contract unenforceable.[50]  Garcia responds that the contract is enforceable because it contains the phrase "as evidenced by the signatures below, the Borrower and lender agree to the foregoing."[51]  The section beneath this statement is signed by Bernardo and Cristina Garcia.  Garcia argues that because the contract requires

---

[44]SAC, ¶ 32.

[45]*Id.*

[46]*Id.*

[47]*Id.*, ¶ 33.

[48]*Id.*, Exh. 1.

[49]Wells MTD at 4; BofA MTD at 6-7.

[50]Wells MTD at 1-2; BofA MTD at 6-7.

[51]SAC, Exh. 1.

"signatures," and multiple signatures appear on the contract, the contract is binding and enforceable.[52]  As defendants correctly argue, however, the mere presence of multiple signatures does not render the contract enforceable against a non-signing party.[53]

Citing *Barroso v. Ocwen Loan Servicing*, 208 Cal.App.4th 1001 (2012), *Chavez v. Indymac*, 219 Cal.App.4th 1052 (2013), and *Corvello v. Wells Fargo Bank*, 728 F.3d 878 (9th Cir. 2013), Garcia contends that the fact that she made payments required by the loan modification agreement precludes defendants from asserting the statute of frauds.[54]  These cases each involve a loan modification under the Home Affordable Modification Program ("HAMP"), which the United States Treasury Department launched in 2009 to provide incentives to banks to refinance delinquent mortgages.  *Corvello*, 728 F.3d at 880.  Under the first step of the HAMP program, borrowers supply information to the servicer concerning their finances and ability to pay their mortgage.  *Id.* at 880.  The servicer then reviews the information to determine whether the borrower qualifies for a loan modification, and calculates a modified payment.  *Id.*  If the borrower appears eligible, the servicer prepares a Trial Payment Plan ("TPP"), which requires the borrower to submit documentation confirming the accuracy of her financial representations, and to make trial payments.  *Id.* at 880-81.  The TPP also imposes requirements on the servicer.  Specifically, it mandates that the servicer provide the borrower with an executed copy of the TPP and the Modification Agreement.  *Id.* at 881.  The TPP further requires that the servicer offer a permanent loan modification if, based on the financial documentation, it determines that the borrower is eligible under HAMP.[55]  *Id.*  If the borrower is ineligible, the servicer must inform

---

[52]Wells Opp. at 5; BofA Opp. at 6.

[53]Reply in Support of Motion to Dismiss ("Wells Reply"), Docket No. 47 (Mar. 24, 2014) at 1-2; Reply in Support of Motion to Dismiss ("BofA Reply"), Docket No. 46 (Mar. 20, 2014) at 5.

[54]Wells Opp. at 5-6; BofA Opp. at 6-7.

[55]A TPP must include the following language, as required by Treasury Supplemental Directive 09-01:
"If I am in compliance with this Loan Trial Period and my representations in

1   the borrower of her ineligibility and explore alternatives.  *Id.*

2       In *Barroso*, the California Court of Appeal held that a plaintiff had adequately alleged the

3   existence of a valid modification agreement under HAMP.  208 Cal.App.4th at 1013.  It rejected

4   the loan servicer's argument that the loan modification was unenforceable because, *inter alia*, the

5   plaintiff did not receive a copy of the agreement signed both by her and the servicer.  *Id.* at 1011-

6   12.  The court reasoned that the interpretation urged by the servicer would violate fundamental

7   principles of contract interpretation by giving the servicer sole control over the formation of the

8   contract, because it could simply refuse to return a signed copy to the borrower despite her full

9   performance.  *Id.*  It added that such an interpretation would also conflict with language in the

10  agreement that required the servicer to modify the borrower's loan.  The language the court

11  referenced stated: "If my representations in Section 1 continue to be true in all material respects,

12  then this Home Affordable Modification Agreement ('Agreement') will, as set forth in Section 3,

13  amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the

14  Mortgage."  *Id.* at 1013.  The court expressly noted, however, that it was not deciding whether

15  the statute of frauds barred enforcement of the contract against the servicer, because the servicer

16  had not raised the issue as an affirmative defense either in its demurrer or on appeal.  *Id.* at 1015.

17  Consequently, *Barroso* does not address the question that defendants have raised here – whether

18  the statute of frauds is a defense to Garcia's breach of contract claim.

19      The Ninth Circuit did consider the statute of frauds in *Corvello*, however.  *Corvello*

20  involved two families of borrowers, each of which alleged that it had fully performed under a

21  TPP, but that the servicer never offered it a permanent modification, nor notified it that it did not

22  qualify for a modification.  728 F.3d at 882.  One of the families, the Corvellos, dealt with the

23  bank in writing, while the other, the Lucias, communicated with the bank only by telephone.  *Id.*

24  ―――――――――――

25      Section 1 continue to be true in all material respects, then the Lender will provide
        me with a Loan Modification Agreement, as set forth in Section 3, that would
26      amend and supplement (1) the Mortgage on the Property, and (2) the Note secured
        by the Mortgage. . . .  I understand that after I sign and return two copies of this
27      Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify
        for the Offer or will send me written notice that I do not qualify for the Offer."  *Id.*
28

at 881.  The court held that under California law, the borrowers' allegations that they had fully performed under the terms of the TPP by submitting accurate documentation and making trial payments contractually obligated the servicer to offer them permanent mortgage modifications. *Id.* at 883.  Citing *Secrest v. Security National Mortgage Loan Trust 2002–2*, 167 Cal.App.4th 544 (2008), the court rejected the servicer's statute of frauds defense to the Lucias' claim on the ground that they had alleged full performance of their obligations under the contract and could therefore enforce its terms.  *Id.* at 885.

The California Court of Appeal reached a similar result in *Chavez v. Indymac*.  Like the plaintiffs in *Corvello*, the plaintiff in *Chavez* alleged that a lender had offered her a HAMP loan modification.  219 Cal.App.4th at 1055.  Plaintiff asserted that she had signed and timely returned the document, and fully performed under its terms, but that the lender never mailed a copy of the loan modification agreement that it had signed.  *Id.*  The court held that defendants were equitably estopped from raising the statute of frauds as a defense because, *inter alia*, Chavez had detrimentally changed her position by signing the modification agreement, which obligated her to pay additional interest, fees, and costs that she would not have had to pay absent the agreement. *Id.* at 1061.

As alleged, Garcia's situation is distinguishable from that of the plaintiffs in *Corvello* and *Chavez*.  Garcia does not allege that she obtained a loan modification under HAMP, nor does she allege facts showing that her payments were pursuant to a TPP that obligated the servicer to modify her loan permanently if she made the required payments and submitted her financial documentation showing she was eligible for a HAMP modification.  In fact, Garcia does not allege any of the terms of the purported temporary loan modification agreement she had with defendants nor any of the circumstances that led up to her entry into the purported permanent loan modification agreement.  Rather, she alleges only that she made "numerous temporary loan modification payments," was subsequently granted a permanent modification, and made two payments before Wells Fargo refused to honor the agreement.[56]  The court is therefore unable to

---

[56]SAC, ¶¶ 37, 38.

1  determine whether defendants were legally obligated to modify Garcia's loan permanently or to
2  continue to accept her payments.  Nor is it able to determine whether the payments she made prior
3  to her purported execution of a permanent loan modification agreement in November 2011
4  constituted full performance of the alleged temporary loan modification, such that Bank of
5  America was obligated to offer her a permanent loan modification.

6       Generally, "four elements must be present in order to apply the doctrine of equitable
7  estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his
8  conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to
9  believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he
10 must rely upon the conduct to his injury."  *Chavez*, 219 Cal.App.4th at 1058.

11      A party can be estopped to assert the statute of frauds if the other party has fully performed
12 the contract, but only where the performance consists of something other than mere payment of
13 money.  *Secrest*, 167 Cal.App.4th at 556 ("The principle that full performance takes a contract out
14 of the statute of frauds has been limited to the situation where performance consisted of conveying
15 property, rendering personal services, or doing something other than payment of money").  In
16 *Corvello* and *Chavez*, plaintiffs' performance under the TPP consisted not merely of making trial
17 payments, but also of submitting documentation to the bank regarding their eligibility for a
18 permanent modification.  Garcia, by contrast, alleges only that she made trial payments under the
19 temporary loan modification agreement.  She does not allege any of the terms of that agreement,
20 so the court cannot determine whether it was a HAMP agreement, which would have called also
21 for her to submit financial documentation to defendants, or whether, if it was a different type of
22 agreement, Garcia fulfilled all of her obligations under a contract that required defendants to offer
23 her a permanent modification if she did.  Consequently, based on her current allegations, Garcia
24 has not adequately pled that she completely performed the temporary loan modification agreement,
25 or that, if she did, that estops defendants from asserting the statute of frauds as a defense to her
26 claim that they breached the alleged permanent loan modification agreement.

27      A party can also be estopped to assert the statute of frauds if the other party partly performs,
28 and invoking the statute of frauds would cause unconscionable injury.  *Id*. at 555.  "In addition to

18

having partially performed, the party seeking to enforce the contract must have changed position in reliance on the oral contract to such an extent that application of the statute of frauds would result in an unjust or unconscionable loss, amounting in effect to a fraud." *Id.* The payment of money alone is not a sufficient change in position to estop the other party from asserting the statute of frauds. *Id.* ("Before a party can be estopped to assert the statute of frauds due to the other's part performance, it must appear that a sufficient change of position has occurred so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud. . . . The payment of money is not 'sufficient part performance to take an oral agreement out of the statute of frauds,' for the party paying money 'under an invalid contract . . . has an adequate remedy at law,'" quoting *Anderson v. Stansbury*, 38 Cal.2d 707, 715-16 (1952) (brackets omitted)).

Garcia alleges she made two payments under the permanent loan modification agreement; thus, she has alleged part performance of that agreement. Whether defendants are estopped to assert the statute of frauds as to that agreement thus depends on whether she has alleged facts demonstrating that she sufficiently changed her position in reliance on the agreement. Garcia alleges that "[h]ad Defendants not disavowed and confused the status of the agreement, plaintiff, before she became ill, could have borrowed monies from family and friends to cure any default."[57] This allegation is overly conclusory. Garcia does not identify the individuals from whom she could have borrowed money, how much they could have lent her, whether they in fact had money available to lend her, and whether they had indicated a willingness to give it to her. She has thus failed to plead facts that plausibly allege the prospect of such loans was a realistic and thus *plausible* means of curing any default. See *Mehta v. Wells Fargo Bank, N.A.*, No. 10CV944 JLS (AJB), 2011 WL 1157861, *2 (S.D. Cal. Mar. 29, 2011) ("Plaintiff attempts to plead reliance by alleging that he would have pursued other means to avoid foreclosure had Wells Fargo not promised to delay the sale. In support, Plaintiff identifies several means-tendering funds to cure the default, obtaining a temporary restraining order, and seeking bankruptcy protection. What

---

[57]SAC, ¶ 34.

Plaintiff has not alleged, however, is whether he realistically could have pursued these options three business days before the sale.  The SAC does not allege any facts suggesting that Plaintiff would have been successful in taking legal action"); *Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, *7 (S.D. Cal. Mar. 2, 2010) ("Plaintiff alleges she failed to take legal action to delay the trustee's sale because she believed Wells Fargo had already agreed to delay the sale in exchange for her $2,500.77 payment.  Plaintiff does not, however, allege facts that could establish that Plaintiff would have been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession of the home").  Accordingly, Garcia has failed adequately to plead reliance sufficient to estop defendants from asserting the statute of frauds.[58]

---

[58]Bank of America argues that Garcia's claim against it must be dismissed for the additional reason that she has not alleged that Bank of America, as opposed to SPS or Wells Fargo, breached the agreement.  Garcia counters that Bank of America is liable because it unilaterally transferred its obligations and duties to SPS, and she did not release it from the obligations it owed her under the loan modification agreement.  As Bank of America correctly notes, under the terms of the deed of trust, it was not required to obtain Garcia's consent before transferring servicing of the loan to SPS.  (BofA Reply at 4-5.)  The deed of trust states:

> "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser."  (Well RJN, Exh. A; BofA RJN, Exh. A.)

This does not end the court's analysis, however, as the question remains whether Bank of America can be held liable for SPS's actions even if it did not require Garcia's consent to transfer servicing to that entity.  As noted, Bank of America argues that although Garcia has pled this claim against all defendants, her factual allegations focus only on SPS's actions.  (BofA MTD at 6.)  It contends

1    For these reasons, the court grants defendants' motions to dismiss Garcia's breach of

2    contract claim.

3    **D.    Violations of Business and Professions Code § 17200 et seq**

4    "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair,

5    deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No.

6    08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. &

7    PROF. CODE § 17200). "'An act can be alleged to violate any or all of the three prongs of the

8    UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152

9    Cal.App.4th 1544, 1554 (2007)). The law is "sweeping, embracing anything that can properly

10   be called a business practice and at the same time is forbidden by law." *Cel-Tech*

11   *Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Palestini v.*

12   ─────────────────────────────

13   that Garcia has not pled that SPS is its agent, and that her assertion in the opposition that this is
     the case cannot be considered by the court. (BofA Reply at 3.) In fact, Garcia alleges that "each

14   of the Defendants was the agent, employee, servant and/or joint venturer of the remaining

15   Defendants." (SAC, ¶ 8.) She alleges no facts, however, supporting the existence of such a
     relationship between SPS and Bank of America, however, and her conclusory assertion is

16   inadequate under *Iqbal*.

17   Nonetheless, Bank of America could be held liable on an enforceable contract. Under
     California law, a contracting party does not escape liability simply by transferring its rights and

18   obligations. 1 WITKIN SUMMARY OF CALIFORNIA LAW Ch. 1, § 730 (10th ed) ("Where the subject

19   matter of the assignment (e.g., a bilateral contract) involves reciprocal rights and duties, the
     assignor may transfer the benefits, i.e., the assignor may transfer his or her rights, but cannot

20   escape the burden of his or her obligation by a mere assignment. The assignor still remains liable

21   to the promisee. Even if the assignee assumes the obligation, i.e., agrees to perform it, the
     assignor still remains secondarily liable as a surety or guarantor, unless the promisee releases him

22   or her or the parties execute a complete novation"); RESTATEMENT (SECOND) OF CONTRACTS

23   § 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract
     to assume the duty made with the obligor by the person delegated discharges any duty or liability

24   of the delegating obligor").

25   Wells Fargo's liability would appear to be premised on Bank of America's since at the time
     of the latter's purported entry into the loan modification agreement, Wells Fargo was the

26   beneficial owner of the loan, and Bank of America, as servicer, acted as its agent. See, e.g.,
     *Almaden v. Peninsula Mortg., Inc.*, Civ. No. 12–00390 HG–BMK, 2012 WL 6738512, *6 (D.

27   Haw. Dec. 31, 2012) ("[A]s loan servicer, Flagstar Bank had authority to foreclose as an agent
     of the beneficial owner"). Nowhere in the complaint does Garcia plead this theory of liability

28   explicitly.

*Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).

Garcia alleges that defendants engaged in the following unfair business practices:

1.  Disregarding the permanent loan modification agreement executed in 2011;

2.  Fraudulently and knowingly procuring or offering false or fraudulently prepared documents;

3.  Violating California Civil Code §§ 2923.4, 2923.7, 2924, 2924.10, 2924.11, 2924.17, 2932.5, 2934, and the criminal fraud statutes of California;

4.  Falsely promising Garcia a permanent loan modification and entering into a written agreement regarding such an agreement, accepting some payments, and then disregarding the agreement at a time defendants knew Garcia was ill and suffering the effects of cancer (Wells Fargo and SPS);

5.  Intentionally understaffing the loan modification department, and providing staff who asked borrowers to resubmit documentation repeatedly (Wells Fargo and SPS only);

6.  Violating the April 2011 consent decree; and

7.  Billing Garcia for unauthorized default charges, fees, and force-placed insurance at a substantial markup.[59]

### 1.   Disregarding a Permanent Loan Modification

Garcia's first allegation appears to rest on her breach of contract claim. As the court has already determined that Garcia failed to state a viable claim for breach of contract, this allegation will not support a UCL claim. Because Garcia may be able to allege facts sufficient to state a breach a contract claim, however, the court must analyze whether such allegations would suffice to support a claim under the UCL. Standing alone, a breach of contract may not be a sufficient basis upon which to ground a UCL claim. See *Dillon v. NBCUniversal Media LLC*, No. CV

---

[59]SAC, ¶¶ 13-20.

12–09728 SJO (AJWx), 2013 WL 3581938, *8 (C.D. Cal. June 18, 2013) ("'California courts have held that a[ ] breach of contract is not itself 'unlawful' conduct for purposes of California's UCL,'" quoting *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1111 (E.D.Cal. 2010)); *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645 (2008) ("[A] breach of contract may . . . form the predicate for Section 17200 claims, provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent,'" quoting *Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1117 n. 12 (2001)); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal.App.4th 1463, 1484 (2005) ("Contractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law," quoting *Gibson v. World Savings & Loan Assn.*, 103 Cal.App.4th 1291, 1302 (2002) (internal alteration omitted)). Thus, if Garcia were to file an amended complaint that stated a viable breach of contract claim, the court would still have to determine whether the specific factual allegations underlying that claim plead conduct that is unfair, fraudulent or unlawful for purposes of the UCL claim.

The term "fraudulent" as used in section 17200 does not refer to the common law tort of fraud but to conduct that is likely to deceive members of the public. *Puentes*, 160 Cal.App.4th at 645. Unless the challenged conduct targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer. *Id.* Garcia's allegation that defendants entered into a loan modification agreement, only to refuse her payments and foreclose on her home, is conduct likely to deceive a reasonable consumer. California courts are split on the proper test to utilize in assessing whether a defendant's conduct satisfies the "unfair" prong of the UCL. *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1267 (2006). See also *Boschma v. Home Loan Ctr., Inc.*, 198 Cal.App.4th 230, 252 (2011) (noting that California courts have applied a variety of tests in assessing the unfairness prong, including a requirement that the claim be tethered to other legal requirements or one that conduct be "unethical, oppressive, unscrupulous or substantially injurious to consumers). Courts that apply the unethical or substantially injurious test weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Bardin*, 136 Cal.App.4th at 1265. In *Smith*, the court provided examples of actions that would violate the UCL under the unethical, oppressive, unscrupulous or

substantially injurious test.  Among these were asserting a contractual right one does not have and systematically breaching a form contract affecting many consumers.  93 Cal.App.4th at 719. While Garcia's complaint contains no allegations suggesting that defendants systematically breached loan modification agreements with borrowers, her allegations could be read as pleading that defendant asserted a contractual right it did not have.  Because Garcia has not adequately alleged a breach of either an enforceable temporary or permanent loan modification agreement, however, she cannot plead such a breach as the basis for a UCL claim.  Thus, this aspect of her UCL claim fails.

### 2.    Allegedly Fraudulent Conduct

Garcia's second, fourth, and seventh allegations, and so much of her third allegation as concerns California's criminal fraud statutes, plead that defendants engaged in fraudulent conduct. "Conduct is considered 'fraudulent' under the UCL if [it] is 'likely to deceive.'"  *Casault v. Federal Nat. Mortg. Ass'n*, 815 F.Supp.2d 1113, 1129 (C.D. Cal. 2012).  Allegations that sound in fraud must meet the heightened pleading requirements of Rule 9.  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  See *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); see also *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (holding that Rule 9(b) requires a pleader to set forth the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Dielsi v. Falk*, 916 F.Supp. 985, 995 n. 12 (C.D. Cal. 1996) ("The fraud complaint should generally set out the time, place, and content of alleged misrepresentations, who made the statements, [and] why they were false, as well as set forth specific facts to show the defendant's knowledge of material falsity," citing *In re GlenFed Securities Litig.*, 42 F.3d 1541, 1547–58 (9th Cir. 1994)); see also *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1969) ("By requiring

the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a pre[-]complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate").

Garcia's second, third, fourth, and seventh allegations fail to satisfy the particularity requirement of Rule 9(b).  Garcia does not allege the "who, what, where, and when" of the fraudulent activity.  She does not identify, for example, any of allegedly false and fraudulent documents defendants purportedly procured, offered or prepared.  She does not identify any of the individuals involved in procuring, offering or preparing the documents, either by name or title.  Nor does she allege when the false documents were procured, offered, or prepared.  Finally, she does not allege why the documents were false or fraudulent.  Even considered in light of the remaining allegations in Garcia's complaint, the basis for her UCL claim under the fraudulent prong is so vague that it lacks all content.  As respects her allegation that defendants engaged in conduct violating the criminal fraud statutes, Garcia does not even identify the statutes to which she has reference.  Similarly, she does not state what unauthorized default charges and fees were billed, when they were applied, or what she believes the charges should actually have been.  Thus, it is impossible to determine from the pleading how the charges were false or fraudulent.  Garcia's fraud allegations are, as a consequence, insufficient to support a UCL claim.

Garcia's allegation regarding unauthorized default charges and fees fails for the additional reason that it does not adequately plead that Garcia suffered injury in fact as required to have standing under the UCL.  "[A] plaintiff must have suffered an injury in fact and have lost money or property as a result of [the] unfair competition to have standing to pursue either an individual or a representative claim under the California unfair competition law."  *Hall v. Time, Inc*., 158 Cal.App.4th 847, 849 (2008) (citing CAL. BUS. & PROF. CODE § 17204); see also *Plastino v. Wells Fargo Bank*, No. C 12–01037 CRB, 2012 WL 2061515, *6 (N.D. Cal. June 7, 2012); *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1199 (E.D. Cal. 2010).  Because Garcia's allegations fails to identify the amount of the fees charged or when they were assessed, it is too generalized and vague to give rise to an inference that she paid the charges or fees, or to support a conclusion that she has standing to assert a claim under the UCL.  See, e.g., *Cornejo*

*v. JPMorgan Chase Bank*, No. CV 11–4119 CAS (VBKx), 2012 WL 628179, *6 & n. 5 (C.D. Cal. Feb. 27, 2012) ("[P]laintiffs allege loss of money 'in paying a fee.'. . . This vague reference to a fee also fails to establish standing because plaintiffs do not point to any alleged wrongful conduct by defendants that resulted in this unknown fee being charged.  Plaintiffs do not mention the amount of this fee or why it was charged").  Compare *Ellis v. J.P. Morgan Chase & Co.*, No. 12–cv–03897–YGR, 2013 WL 2921799, *2, *18 (N.D. Cal. June 13, 2013) (finding that plaintiffs had standing under the UCL where they alleged that "Chase assessed $154.24 for 'Miscellaneous Fees' on a July 1, 2011 Mortgage Loan Statement . . . [which] was marked-up and unnecessary," and that Chase marked up fees "on dates including October 18, 2011, October 28, 2011, and February 18, 2012"); *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 924 (N.D. Cal. Apr. 25, 2013) (finding that plaintiffs had UCL standing because they alleged that "Wells Fargo began assessing $95 [broker's price opinion fees] on December 28, 2006 . . . [and] on September 27, 2007, and March 28, 2008 . . . [and] assessed $100 in 'Other Charges' on September 19, 2011"). Garcia's allegation regarding unauthorized charges and fees thus fails for this additional reason as well.[60]

### 3.    Understaffing and the Consent Decree

Under Rule 8(a), "a pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." FED.R.CIV.PROC. 8(a).  See also FED.R.CIV.PROC. 8(d)(1) (providing that "each allegation must be simple, concise, and direct.  No technical form is required").  See *Iqbal*, 556 U.S. at 678 (stating that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[60]Garcia asserts in her opposition that her UCL and IIED claims, in combination, plead fraud.  (BofA Opp. at 5.)  She does not elaborate on this argument, and the court concludes that her allegations fail to satisfy the heightened pleading requirements of Rule 9(b).

for the misconduct alleged"); *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

There are no facts alleged in Garcia's UCL claim that support her allegation that the loan modification department was understaffed and that the 2011 consent decree was violated.[61] Garcia pleads no facts supporting her allegation that any loan modification department affiliated with defendants was understaffed or that personnel in that department repeatedly asked borrowers to submit the same documentation. Nor does she even identify the consent decree to which she makes reference.[62] Consequently, these allegations fail to give defendants fair notice of the nature

---

[61]Although there are some allegations in the complaint concerning constant changes in personnel in the loan modification department, these are not incorporated in the UCL claim.

[62]Garcia may refer to the National Mortgage Settlement (NMS), which is a settlement between, *inter alia*, Wells Fargo and the federal government approved by a district court in the D.C. Circuit. It is doubtful Garcia has standing to assert a claim based on a purported breach of the NMS because she has alleged no facts and adduced no evidence that she was either a party to the agreement or an intended third party beneficiary. See *Duarte v. Wells Fargo Bank, N.A.*, No. 3:13–cv–00371–RCJ–VPC, 2013 WL 5236565, *2 (D. Nev. Sept. 16, 2013) (finding that the NMS did not create a private cause of action and that it would not otherwise support a cause of action against Wells Fargo for breach of implied contract or promissory estoppel based on alleged promises the bank made to approve a loan modification application, and stating that plaintiffs might "be able to ask the U.S. District Court for the District of Columbia to intervene to hold Wells Fargo in contempt. That court presumably has continuing jurisdiction over the consent judgment known as the 'National Mortgage Settlement'"); see also *Radkowski v. Bank of America, N.A.*, Case No. 4:13cv305, 2013 WL 5718755, *2 n. 1 (E.D. Tex. Oct. 18, 2013) ("Plaintiff concedes that he is not stating a claim to enforce the National Mortgage Settlement. Moreover, Plaintiff lacks standing to enforce consent decrees to which he is not a party. Plaintiff cannot use the settlement to support any other claim in this case"); *Coe v. Holder*, Civil Action No. 13-cv-184 (RLW), 2013 WL 3070893, *1 n. 2 & *2 (D.D.C. June 16, 2013) (noting that "[d]espite having their Motion to Intervene in the National Mortgage Settlement previously denied because, in part, the Settlement 'dealt with mortgage practices in general, and not any particular mortgages,' . . . Plaintiffs attempt to revive this argument again here, claiming that they are 'seeking enforcement of the terms of the consent agreement, a contractual obligation,'" and rejecting such an argument); *Rehbein v. CitiMortgage, Inc.*, 937 F.Supp.2d 753, 761 (E.D. Va. 2013) ("Although the National Mortgage Settlement certainly aims to benefit to individual borrowers through the implementation of more stringent servicing standards, Rehbein has alleged no facts from which the court could conclude that these borrowers are intended beneficiaries rather

of the claims Garcia asserts and the facts underlying them.  Because they fail to satisfy the pleading requirements of Rule 8, the allegations are not adequate to support a UCL claim.

### 4.    Alleged Violations of the California Civil Code

In addition to alleging violation of California's fraud criminal statutes, Garcia contends that defendants have violated California Civil Code §§ 2923.4, 2923.7, 2924, 2924.10, 2924.11, 2924.17, 2932.5, and 2934.  Garcia does not specify how defendants violated each of these statutes, some of which contain numerous different provisions.  Nor does she plead facts indicating that any of defendants' actions violated specific portions of the statutes.  See *Woodson v. International Business Machines, Inc.*, No. C 05-3387 JF, 2006 WL 3742211, *5 (N.D. Cal. Dec. 19 , 2006) ("To be sure, the FAC-AC now cites at least seven statutory schemes.  However, Plaintiff fails to identify which of her factual allegations apply to which specific provisions of the ADA or Title VII that allegedly have been violated by Defendant.  It may be true, as Plaintiff alleges, that '[a]ll [the cited] statutes have to do with forbidding unlawful discrimination, providing for family and medical leave, and providing penalties for violations,' but such a broad allegation does not satisfy the requirements of Federal Rule of Civil Procedure 8.  That rule requires that any complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Complaints that fail to make such a statement give inadequate notice to defendants of the alleged violations.  Simply identifying a broad range of statutes applicable to the relevant subject matter is not an adequate substitute for informing a defendant of the rights it has allegedly violated" (internal citations omitted)).  Because it violates Rule 8, this allegation does not suffice to plead a viable UCL claim.

Several of the alleged Civil Code violations are inadequate for additional reasons as well.  Garcia alleges that defendants violated Civil Code §§ 2923.7, 2924.10, 2924.11, and 2924.17.  The California's Homeowners Bill of Rights created a private right of action to enforce these statutes:

---

than merely incidental beneficiaries.  The language of the Consent Judgment indicates that the parties to the agreement did not intend the individual borrowers to be able to sue to protect the benefits the consent judgment confers").

"(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)." CAL. CIV. CODE § 2924.12(b).

See also *Rockridge Trust v. Wells Fargo*, __ F.Supp.2d __, 2013 WL 5428722, *24 (N.D. Cal. Sept. 25, 2013).

The Homeowners Bill of Rights, however, did not take effect until January 1, 2013, after the conduct giving rise to Garcia's claims occurred. There is no indication that the law applies retroactively.[63] *Vasquez v. Bank of America , N.A.*, No. 13–cv–02902-JST, 2013 WL 6001924, *7-8 (N.D. Cal. Nov. 12, 2013) (noting that the Homeowners' Bill of Rights took effect on January 1, 2013 and "[t]here is no indication that HBOR has retroactive effect").

Under Civil Code § 2923.7, once a borrower requests foreclosure prevention alternatives, the servicer must promptly designate one person to be the point of contact to communicate directly with the borrower. CAL. CIV. CODE § 2923.7(a). Among other things, the point of contact must possess sufficient knowledge about foreclosure alternatives, and must have access to individuals who have the ability and authority to stop foreclosure proceedings. CAL. CIV. CODE § 2923.7(b). To allege a § 2923.7 claim properly, a plaintiff must plead that a violation of the provision caused actual economic damages. See CAL. CIV. CODE § 2924.12(b). Garcia has failed to allege that she

---

[63]Garcia alleges no facts regarding the period between HBOR's January 1, 2013 effective date and the sale of the property on January 4, 2013.

suffered any damages as a result of defendants' purported failure to comply with the single point of contact requirement between January 1, 2013 and the sale of her home three days later.  See *Rockridge Trust v. Wells Fargo NA*, No. 13–cv–01457–JCS, 2014 WL 688124, *23 (Feb. 19, 2014) ("Plaintiffs have failed to adequately allege that any damages they incurred were caused by Defendants' alleged failure to comply with the single point of contact requirements. . . .  Thus, Plaintiffs fail to allege a claim for wrongful foreclosure based on violations of the HBOR provisions regarding a single point of contact").

Civil Code § 2924.10 provides: "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt." CAL. CIV. CODE § 2924.10(a).  Garcia has not alleged that she submitted any such documents in 2013.  Civil Code § 2924.11 provides that the "mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised." CAL. CIV. CODE § 2924.11(f).  Garcia's UCL claim based on this statute fails because she fails to allege what type of late fees she incurred, when she incurred them, or in what amounts.

Civil Code § 2932.5 applies only to mortgages, not deeds of trust, and is thus inapplicable. *Calvo v. HSBC Bank USA, N.A.*, 199 Cal.App.4th 118, 122 (2011) (citing *Stockwell v. Barnum*, 7 Cal.App.413 (1908)); see also *Caballero v. Bank of Am.*, No. 10–CV–02973–LHK, 2010 WL 4604031, *3 (N.D. Cal. Nov. 4, 2010) ("§ 2932.5 does not require the recordation of an assignment of a beneficial interest for a deed of trust, as opposed to a mortgage"); *Roque v. Suntrust Mortg., Inc.*, No. C–09–00040 RMW, 2010 WL 546896, *3 (N.D. Cal. Feb. 10, 2010) ("Section 2932.5 applies to mortgages, not deeds of trust.  It applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee").

Finally, Garcia is unable to assert a claim under Civil Code § 2923.4 because that section merely states the general purpose of HBOR, and does not provide specific rights or impose

specific obligations whose breach would support a claim under the unlawful prong of the UCL. See *Crane v. Fargo*, No.: CV 13-01932 KAW, 2014 WL 1285177, *3 (N.D. Cal. Mar. 24, 2014) (dismissing claim under § 2923.4).[64]

For all of these reasons, Garcia's allegations of alleged Civil Code violations are insufficient to support her UCL claim.

### D.    Negligence

Garcia alleges that Wells Fargo and SPS were negligent because they breached a duty they owed her to engage in loan modification discussions in good faith.[65]   The breaches she alleges are defendant's failure to honor the parties' purported loan modification agreement and their wrongful conduct of a trustee's sale.[66]

To plead and prove negligence under California law, a plaintiff must establish: "(1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages." *Palm v. United States*, 835 F.Supp. 512, 520 (N.D. Cal. 1993); see also *Krawitz v. Rusch*, 209 Cal.App.3d 957, 963 (1989) ("For a negligence cause of action, the plaintiff must allege a duty, a breach of that duty, and injury to the plaintiff as a proximate result

---

[64]The court expresses no opinion as to whether Garcia can allege facts stating a claim under Civil Code § 2923.17, which provides:

"(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." CAL. CIV. CODE § 2924.17.

[65]SAC, ¶¶ 22-23.

[66]*Id.*

of that breach"); *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814, 820 (1976) ("According to the familiar California formula, the allegations requisite to a cause of action for negligence are (1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result").

The general rule is that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Velasquez v. Chase Home Finance LLC*, No. C 10-01641 SI, 2010 WL 3211905, *5 (N.D. Cal. Aug. 12, 2010) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991); see also *Gonzalez v. First Franklin Loan Services*, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, *8 (E.D. Cal. Jan. 11, 2010) (same)). The principle that a financial institution owes no duty to a borrower has been extended to loan servicers as well. *Azzini v. Countrywide Home Loans*, No. 09cv787 DMS (CAB), 2009 WL 5218042, *2 (S.D. Cal. Dec. 29, 2009); *Wong v. Am. Servicing Co., Inc.*, No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, *6 (E.D. Cal. Dec. 18, 2009) ("Plaintiffs fail to allege any facts that as a lender, Meridias or Hicks actively participated in the financed enterprise beyond their capacities as lender and lending agent. Similarly, plaintiffs cite no facts or authority to support their position that American Servicing or MERS owed them a duty of care in their respective capacities as servicer and nominee o[f] the trust. Rather, in their complaint, plaintiffs describe nothing more than an arms-length loan transaction between defendants and themselves. . . . As such, under the facts pled in the complaint, defendants owed plaintiffs no duty of care").

Moreover, courts have routinely held that "[j]ust as approving an initial loan is within a lender's conventional role, loan modification is also intimately tied to [d]efendant's lending role," and loan modification negotiations do not create a duty of care on the part of the lender or loan servicer. *Gutierrez v. PNC Mortg.*, No. 10cv01770 AJB, 2012 WL 1033063, *4 (S.D. Cal. Mar. 26, 2012) (quoting *Karimi v. Wells Fargo*, No. CV 11–00461–RGK (OPx), 2011 U.S. Dist. LEXIS 47902, *7 (C.D. Cal. May 4, 2011)). See also *Juarez v. Suntrust Mortg., Inc.*, No. CV F 13–0485 LJO SAB, 2013 WL 1983111, *12 (E.D. Cal. May 13, 2013) (citing *Nymark* and rejecting plaintiffs' argument that their servicer owed them a duty of care because it mishandled

underwriting documentation and engaged in dual tracking); *Lyons v. Bank of America, NA*, No. 11–01232 CW, 2011 WL 3607608, *7 (N.D. Cal. Aug. 15, 2011) (noting that "the weight of authority is against finding a fiduciary relationship or duty of care" between a lender or servicer offering a loan modification and a borrower); *Argueta v. JP Morgan Chase,* No. CIV. 2:11–441 WBS GGH, 2011 WL 2619060, *5 (E.D. Cal. June 30, 2011) (citing *Nymark* and stating that "[p]laintiff's allegations about the loan modification application process are insufficient to plausibly suggest that defendants owed plaintiff a duty of care"); *Coppes v. Wachovia Mortg. Corp.*, No. 2:10–cv–01689–GEB–DAD, 2011 WL 1402878, *7 (E.D. Cal. Apr. 13, 2011) ("Plaintiff has not alleged 'special circumstances' plausibly suggesting Wachovia owed her a duty of care [during the loan modification process] because it 'actively participate[d] in the financed enterprise beyond the domain of the usual money lender.' Therefore, this [negligence] claim is dismissed"); *Sullivan v. JP Morgan Chase Bank, NA*, 725 F.Supp.2d 1087, 1094 (E.D. Cal. 2010) (citing *Nymark* and holding that "[p]laintiffs have provided no authority to support their argument that lenders owe borrowers a duty of care not to misinform them about the loan modification process"). Holding that a lender assumes no duty of care to borrowers merely because it engages in discussions regarding a loan modification is sound policy, since "absent a duty in the first place to modify a loan or even to evaluate such an application under objective standards limiting the lender's discretion, imposing negligence liability for the mishandling of loan modification applications could be a disincentive to lenders from ever offering modification." *Ottolini v. Bank of America*, No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D. Cal. Aug. 19, 2011).

Garcia contends Wells Fargo and SPS exceeded their traditional roles as lenders and/or servicers by recording a notice of trustee's sale that incorrectly reflected she was in default in violation of Civil Code § 2924, and by wrongfully conducting a trustee's sale.[67] Garcia cites *Jolley v. Chase Home Financial, LLC*, 213 Cal.App.4th 872 (2012), and *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49 (2013*), for the proposition that a duty of care arises

---

[67]*Id.*, ¶ 23.

from the loan modification process.[68]  In *Jolley*, the court held that the lender on a construction loan that had made "specific representations" to the borrower concerning "the likelihood of a loan modification" owed the borrower a duty of care.  The court reviewed the six factor test set forth in *Biakanja v. Irving*, 49 Cal.2d 647 (1958), often used in determining whether a duty of care exists.  The test involves balancing various factors, including: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."  *Jolley*, 213 Cal.App.4th at 899 (citing *Biakanja*, 49 Cal.2d at 650).

The *Jolley* court concluded that the "false assurances given by Chase personnel about the prospects for a loan modification" were sufficient to give rise to a duty of care under this framework.  *Id.* at 900-01.  It noted that the lender's assurances were indisputably intended to affect the plaintiff, and concluded it was "foreseeable that Jolley would sink more of his own money into the [property], thereby suffering further injury" once foreclosure occurred.  *Id.* at 900.  The court also found that actual injury was evident, and concluded that "the upbeat prediction of the availability of a loan modification and . . . rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury."  *Id.*  While the court could not determine "how blameworthy Chase's conduct [might] prove to be," it noted that the fact that "Chase benefited from prolonging the loan renegotiation period and encouraging Jolley to complete construction [at the property] certainly len[t] itself to a blameworthy interpretation."  *Id.*  For these reasons, the court concluded that Jolley had sufficiently demonstrated that Chase's conduct went beyond that of a mere lender, and that it owed him a duty of care as a result of its representations.  *Id.* at 906.  See also *Yau v. Deutsche Bank Nat. Trust Co. Americas*, No. 11–57209, 2013 WL 2302438, *3 (9th Cir. May 24, 2013) (Unpub. Disp.) (observing that *Jolley* "applied the six-factor test outlined in [*Biakanja* and] determine[d]

---

[68]Wells Opp. at 6.

[that] a lender or loan servicer owe[d] a duty of care to a borrower").

Following *Jolley,* district courts in California have split as to whether the reasoning in that decision applies to lenders in the residential home loan context. Several courts have held that a lender that affirmatively promises a residential home loan modification to a borrower owes the borrower a duty of care. See *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, *4-7 (N.D. Cal. Mar. 28, 2011) (holding that the defendant lender/servicer "went beyond its role as a silent lender and loan servicer" when it allegedly made an affirmative promise that it would modify plaintiffs' loan, and plaintiffs relied to their detriment on that promise, and stating that the bank "agreed to place plaintiffs on a trial modification plan, guaranteeing that if plaintiffs made payments on time in the modified amount for three months, Chase would provide a permanent modification of their loan"); compare *Ottolini v. Bank of America*, No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D. Cal. Aug. 19, 2011) (holding that a servicer did not owe a duty of care to the mortgagor because "the application for loan modification had not progressed to a concrete stage," and distinguishing *Ansanelli* because there "the lender agreed to place the borrower on a loan modification plan"). Others have held that *Jolley* is limited to the construction loan context. See *Diunugala v. JP Morgan Chase Bank*, No. 12cv2106–WQH–NLS, 2013 WL 5568737, *4 (S.D. Cal. Oct. 3, 2013) ("The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing issues"); *Ware v. Bayview Loan Servicing, LLC,* No. 13-CV-1310 JLS (NLS), 2013 WL 4446804, *5 (S.D. Cal. Aug. 16, 2013) (finding that no duty of care was owed where a servicer told a mortgagor that approval of a loan modification was imminent).

Recently, in *Lueras*, the California Court of Appeal for the Fourth District considered a case similar to this one and addressed whether *Jolley*'s reasoning extended to the residential home loan context. 221 Cal.App.4th 49. Richard Lueras sued Bank of America after it foreclosed on his home thirteen days after sending him a letter promising that no foreclosure sale would occur while Lueras was being considered for foreclosure avoidance programs. *Id.* at 55. Lueras had applied for a HAMP loan modification. In response, Bank of America offered to put him in a forebearance program that reduced his monthly payments; it also promised to consider whether

"additional default resolution assistance" could be offered. *Id.* at 57. Lueras made monthly payments under the forebearance program for 10 months; during this period, Bank of America did not work with him to implement a more permanent foreclosure alternative. *Id.* at 58. Lueras submitted all information required for a HAMP loan modification application; while he was waiting for a response from Bank of America, the trustee, ReconTrust, served a notice of default and notice of trustee's sale. *Id.* Lueras alleged that Bank of America then made an oral offer to modify his loan under HAMP, which he accepted. *Id.* at 58. He asserted that he subsequently received a letter stating that the bank had determined he was not eligible for a modification; when he called to inquire, the bank told him this was an error. *Id.* at 58-59. On May 6, 2011, he received another letter stating that Bank of America was reviewing his documents to determine whether he was eligible for a HAMP loan modification. *Id.* at 59. The letter stated that he would be notified either that a modification had been approved, that he was not eligible for a loan modification, or that the bank needed more information to make a decision. *Id.* When Lueras contacted the bank, he was informed that the second letter had also been in error as his application had already been approved. *Id.* Nonetheless, on May 18, 2011, the bank conducted a foreclosure sale. *Id.*

The *Lueras* court first surveyed the law regarding a lender's duty of care to a borrower and then focused specifically on *Jolley*. It held:

> "We disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives. . . . We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan

modification.  If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct.  If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct."  *Id.* at 67.

The *Lueras* court did hold, however, "that a lender . . . owe[s] a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale.  The law imposes a duty not to make negligent misrepresentations of fact."  *Id.* at 68-69.

Based on this analysis, the *Lueras* court concluded that Bank of America could not be liable for negligence as a result of the loan modification discussions because "Lueras [had] not allege[d] [that] Bank of America . . . did anything wrongful that made him unable to make the original monthly loan payments.  Lueras did not allege Bank of America and ReconTrust caused or exacerbated his initial default by negligently servicing the loan.  To the contrary, he alleged his inability to make the payments was caused by financial hardship."  *Id.* at 68.  The court held that Bank of America could not be liable for failing to "follow through" on an agreement it had made with Lueras to modify his loan because the remedy for that failure "lies in breach of contract, not negligence."  *Id.*  It granted leave to amend, however, because it found that Lueras could possibly allege adequately that Bank of America had negligently misrepresented the status of the application for the loan modification or the date, time, or status of the foreclosure sale.  *Id.*

Following *Lueras,* Garcia's negligence claim must be dismissed to the extent it is based on an allegation that defendants had a duty to her because they engaged in protracted loan modification negotiations with her.  As *Lueras* makes clear, there is no common law duty to offer or approve a modification.  See *id.*; *Aspiras v. Wells Fargo Bank, N.A.*, 162 Cal.Rptr.3d 230, 242-43 (Cal. App. Aug. 21, 2013) (Unpub. Disp.) (holding, in a case involving the possible modification of a residential loan, that the reasoning in *Jolley* was dicta, that the circumstances underlying residential loans and construction loans are distinguishable, and that "the handling of loan modification negotiations or servicing is a typical lending activity that precludes imposition

of a duty of due care").[69]   Thus, on the facts alleged, defendants owed Garcia no duty of care. Her negligence claim must therefore be dismissed.[70]

---

[69]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

[70]If defendants are to be held liable for negligence, it can only be because they made negligent misrepresentations about the status of Garcia's loan modification.  "The elements of [a claim for] negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir. 2001).

In her opposition, Garcia asks that the court construe her negligence claim as a wrongful disclosure claim.  (Wells Opp. at 7; BofA Opp. at 8.)  No such claim is alleged in the second amended complaint, nor could it be as the court has not granted Garcia leave to add the claim. Should Garcia seek to add claims, she must file a noticed motion seeking leave of court.

38

### E.   Intentional Infliction of Emotional Distress

A plaintiff alleging intentional infliction of emotional distress ("IIED") must plead and prove (1) outrageous conduct; (2) intent to cause, or reckless disregard for the possibility that one's conduct may cause, severe emotional distress; (3) severe or extreme emotional distress; and (4) causation.  See, e.g., *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300 (1988); *Fletcher v. Western Nat'l Life Ins. Co.*, 89 Cal.App.3d 376, 394 (1970).  "Outrageous conduct" is conduct that "exceeds all bounds usually tolerated by a decent society" such that "no reasonable man in a civilized society should be expected to endure it."  *Molko v. Holy Spirit Ass'n. for the Unification of World Christianity*, 46 Cal.3d 1092, 1122 (1989); *Cole v. Fair Oaks Fire Protection District*, 43 Cal.3d 148, 155 (1987); *Kraslawsky v. Upper Deck Co.*, 56 Cal.App.4th 179, 194 (1997).  "Where reckless disregard is the theory of recovery, Plaintiff must allege that 'defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress.'"  *Helmer v. Bank of America, N.A.*, No. 2:12–CV–00733–TLN–CKD, 2013 WL 4546285, *6 (E.D. Cal. Aug. 27, 2013) (quoting *Shoop v. Deutsche Bank Nat. Trust Co.*, No. 2:10–CV–01049 (LJO), 2010 WL 2605708, *9 (E.D.Cal. June 28, 2010), aff'd, 465 Fed. Appx. 646 (9th Cir. Jan. 6, 2012) (Unpub. Disp.)).

Garcia alleges defendants are liable for IIED because they knew she was suffering from cancer and her husband was extremely ill in 2011 when she was attempting to complete a loan modification.[71]   Between 2010 and 2012, defendants allegedly were evasive and difficult, constantly lost documents, and changed personnel.[72]  Garcia asserts that in January 2013, Wells Fargo and SPS ignored the permanent loan modification agreement into which the parties had entered, refused to accept Garcia's payments, and conducted a trustee's sale.[73]  She asserts that Bank of America misrepresented that the loan modification would be honored despite knowledge

---

[71]SAC, ¶ 26.

[72]*Id.*, ¶ 27.

[73]*Id.*

that SPS would not do so.[74]  She also charges that defendants acted in reckless disregard of the probability that their actions would cause her to suffer severe emotional distress,[75] that their conduct "was designed to and did harm" her,[76] and that she suffered extreme and emotional distress.[77]

Bank of America argues that Garcia fails to state an IIED claim against it because she does not plead facts showing that it is responsible for SPS's alleged failure to honor the loan modification.[78]  While Garcia alleges that Bank of America knew SPS would not honor the agreement, but intentionally misrepresented that they would, this allegation is entirely conclusory and do not satisfy Rule 9(b).  Nor does Garcia plead facts showing that Bank of America caused Garcia's emotional distress.  Accordingly, Garcia's IIED claim against Bank of America must be dismissed.

Wells Fargo and SPS argue that Garcia has failed to identify with any particularity the severe and extreme emotional distress she suffered.[79]  The California Supreme Court has set a "high bar" for what constitutes severe distress.  *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009).  "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1004 (1993) (quoting *Girard v. Bell*, 125 Cal.App.3d 772, 787-88 (1970) (alteration original)).  "'It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.'"  *Fletcher v. Western National Life Ins. Co.*, 10

---

[74]*Id.*, ¶ 28.

[75]*Id.*

[76]*Id.*, ¶ 30.

[77]*Id.*, ¶ 29.

[78]BofA MTD at 12.

[79]Wells MTD at 8.

Cal.App.3d 376, 397 (1970) (quoting RESTATEMENT (SECOND) TORTS § 46 comment j).  At the pleading stage, however, Garcia's allegation is sufficient to satisfy the injury element of the IIED tort.

A plaintiff can successfully allege outrageous conduct if she pleads that a defendant knew she was especially vulnerable or used its position of power to cause her emotional distress.  *Lesley v. Ocwen Fin. Corp.*, No. SA CV 12–1737–DOC(JPRx), 2013 WL 990668, *11 (Mar., 13, 2013).  See *Fletcher*, 10 Cal.App.3d at 392 (evidence that defendant baselessly denied plaintiff disability benefits and attempted to coerce him into surrendering his policy for $1,200 was deplorable and outrageous); *Hernandez v. Gen. Adjustment Bureau*, 199 Cal.App.3d 999, 1007 (1988) (concluding that plaintiff sufficiently pled outrageous conduct by alleging that defendants knew of her deteriorating mental and emotional state, that she was the sole provider for three children, and that it was imperative that she receive her benefits on time).

The conduct Garcia presently alleges does not rise to the level of outrageousness the law requires to state a claim for IIED.  See *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12–CV–01393–EJD, 2012 WL 3835080, *7 (N.D. Cal. Sept. 4, 2012) (stating that "courts have found as a matter of law that foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress," and collecting cases); *Cockrell for Estate of Cockrell v. Wells Fargo Bank, N.A.*, No. CV 13–2072 SC, 2013 WL 3830048, *6 (N.D. Cal. July 23, 2013) (dismissing plaintiff's IIED claim because "even though Defendant may have known of Mr. Cockrell's health issues, Plaintiff has not pled sufficient facts indicating that Defendant intended to cause distress to Mr. Cockrell when it accelerated his loan; that it was recklessly inconsiderate of his emotional health in doing so; or that Defendant's behavior (however self-interested or unfeeling) rose to the level of intolerable extremity that the law requires here"); *Canas v. Citimortgage, Inc.*, No. SA CV 13–00322–DOC, 2013 WL 3353877, *1, 6 (C.D. Cal. July 2, 2013) (dismissing plaintiff's IIED claim because allegations that defendant required plaintiff to resubmit documents continuously, told plaintiff that a temporary workout agreement would be made permanent following three payments, but then recorded a notice of trustee's sale, did not "rise to the level of conduct so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Accordingly, Garcia's IIED claim must be dismissed.

### F.    Whether Garcia States a Promissory Estoppel Claim

Garcia's fifth cause of action pleads a promissory estoppel claim against Bank of America. The elements of promissory estoppel under California law are: "'(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, *6 (N.D. Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890 (1976)). A promise "that is vague, general or of indeterminate application is not enforceable." To be enforceable, the promise must be sufficiently definite that "'a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" *Id.* (quoting *Aquilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992), and *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003).

Bank of American asserts that Garcia has not alleged a clear and unambiguous promise based on the loan modification agreement, because the agreement was unenforceable under the statute of frauds.[80] A promissory estoppel claim can be viable even where the contract that underlies it does not comply with the statute of frauds, however. 10 WILLISTON ON CONTRACTS § 27:14 (4th ed.) ("The courts have employed the Doctrine of Promissory Estoppel to enforce contracts that failed to comply with the Statute of Frauds in a variety of settings including the classic case in which the courts allow recovery when the plaintiff has detrimentally changed position in reliance on the defendant's promise to execute and deliver a sufficient memorandum"); *Haroutunian v. GMAC Mortgage, LLC*, B237722, 2013 WL 6687158, *7 (Cal. App. Dec. 19, 2013) (Unpub. Disp.) ("While the statute of frauds bars a cause of action for breach of contract,

---

[80]BofA MTD at 8-9.

it does not bar a cause of action for promissory estoppel").  Garcia alleges that Bank of America entered into a permanent loan modification agreement, later assumed by SPS, pursuant to which it agreed not to conduct a trustee's sale of the property so long as she made scheduled payments.[81] This allegation suffices to plead the existence of a promise.

Bank of America next contends allegations of a purported breach of the agreement are properly raised in an action for breach of contract.[82]  To the extent Bank of America suggests that Garcia cannot simultaneously maintain claims for breach of contract and promissory estoppel, its argument is unavailing.  While Garcia cannot ultimately recover on both of her breach of contract and promissory estoppel claims, see *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (promises supported by adequate consideration cannot form the basis for a promissory estoppel claim), the mere fact that she pled both does not mean the promissory estoppel claim must be dismissed.  *Molsbergen v. United States*, 757 F.2d 1016, 1018 (9th Cir. 1985); see also *Sam Kholi Ents., Inc. v. BOC Grp., Inc.*, No. 11CV299 DMS, 2011 WL 3298902, *6 (S.D. Cal. Aug. 1, 2011) ("To the extent that Plaintiff's claims for promissory estoppel and breach of contract are in conflict, the federal rules allow a plaintiff to plead inconsistent claims in a complaint"); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10–CV–01773–LHK, 2010 WL 5069832, *9 (N.D. Cal. Dec. 7, 2010) ("By claiming both breach of contract and promissory estoppel, SOAProjects is simultaneously alleging that those promises were part of a valid contract and that they were unsupported by consideration.  Even though SOAProjects' breach of contract and promissory estoppel claims are mutually exclusive, . . . the federal rules allow plaintiffs to plead inconsistent claims and theories. . . .   Therefore, SCM's motion to dismiss SOAProjects' promissory estoppel claim is denied").

Bank of America also argues that Garcia has failed to plead reliance.[83]  Garcia asserts that in reliance on Bank of America's promises that a permanent loan modification agreement would

---

[81]SAC, ¶ 37.

[82]BofA MTD at 9.

[83]*Id.* at 9-10.

be forthcoming, she made more than $10,000 in temporary and permanent loan modification payments in 2011.[84]  Making these payments, however, is not cognizable reliance because Garcia was contractually bound to make loan payments to Bank of America, and in fact owed more than $10,000 under the terms of the original loan agreement.  See *De La Cruz v. Citi Mortg. Inc.*, No. 1:12–cv–0141–AWI–BAM, 2012 WL 487004, *3 (E.D. Cal. Feb. 14, 2012) ("[P]laintiffs do not allege sufficient reliance on the new representation, in that plaintiffs already were bound contractually to make loan payments.  Accordingly, Plaintiffs do not state a claim for promissory estoppel"); *Ortiz v. America's Servicing Co.*, No. EDCV 12–191 CAS (SPx), 2012 WL 2160953, *7 (C.D. Cal. June 11, 2012) ("Merely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Lawther v. OneWest Bank, FSB*, No. C–10–00054 JCS, 2012 WL 298110, *19 (N.D. Cal. Feb. 1, 2012) ("This Court has previously held, along with other courts, that where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated," citing cases); see also *Lueras*, 221 Cal.App.4th at 79 (stating, in the context of a fraud claim, that "[c]ontinuing to make payment on [a] loan . . . does not constitute detrimental reliance because Lueras already had the obligation to make those payments").

Garcia alleges other forms of reliance, however.  In contrast to her original complaint, in which she alleged only that she "had been deprived of numerous opportunities and potential opportunities to resolve all issues related to the subject property,"[85] she now alleges that "[h]ad Defendants not disavowed and confused the status of the agreement, plaintiff, before she became more ill, could have borrowed monies from family and friends to cure any default."  She asserts that, "[b]y reason of the delay occasioned in the negotiation and execution of the permanent loan modification, and the exacerbation of Plaintiff's physical condition that opportunity

---

[84]SAC, ¶ 41.

[85]Complaint, ¶ 31.

disappeared."[86]  For the reasons stated earlier, this allegations is not adequate to plead detrimental reliance.  See *Mehta*, 2011 WL 1157861 at *2; *Newgent*, 2010 WL 761236 at *7.  Consequently, the court must dismiss Garcia's promissory estoppel claim.

Finally, Bank of America contends that Garcia does not allege it failed to keep its promise.[87]  It is correct that Garcia does not plead that Bank of America, as opposed to SPS, caused her damages.  Her failure to allege causation provides an additional reason to dismiss her promissory estoppel claim against Bank of America.  *US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887, 905-08 (2005) ("'The remedy for promissory estoppel is discretionary.  No rigid or mechanical remedy rule applies.  The remedy is not necessarily coextensive with damages for contract breach but is equitably molded ad hoc for each case according to the dictates of good faith, conscience, and justice.'. . .  Thus, in a promissory estoppel case where the actions of a third party, not the breaching party, cause a plaintiff's damages, a court acts well within its discretion in denying the promissory estoppel claim.  Under such circumstances, it would not be necessary to enforce the promise to avoid an injustice.  Indeed, it would be manifestly unjust to allow recovery in such a situation.  A party allowed in equity to pursue a claim for promissory estoppel because it has no enforceable contract should not be placed in a position better than one with an enforceable contract. . . .  [W]e conclude that in pursuing a promissory estoppel claim, a plaintiff bears the burden of proving, as in an ordinary contract claim, that the defendant's breach caused its damages.  This is particularly true where it is alleged that a third party, not the defendant, caused the plaintiff's damages, and it would be inequitable to shoulder a defendant with damages that it did not cause"); *Solomon v. Aurora Loan Servs., LLC*, No. 2:12–00209 WBS KJN, 2012 WL 4747151, *4 (E.D. Cal. Oct.3, 2012) ("Plaintiff has not demonstrated a likelihood of convincing the court as the trier of fact that Maytal's statements caused her injury").  Because Garcia alleges that SPS, not Bank of America, breached the permanent loan modification agreement, her promissory estoppel claim against Bank of America must be dismissed on this

---

[86]SAC, ¶ 39.

[87]BofA MTD at 10.

ground as well.

## III.  CONCLUSION

For the reasons stated, the court grants defendants' motions to dismiss Garcia's second amended complaint.  Garcia may file an amended complaint within twenty (20) days of this order adding Bernardo Garcia, Jr. as a plaintiff, or alleging facts as to why she is unable to do so.  Any amended pleading may also address the deficiencies noted herein.  As the court's deadline to amend the pleadings has now passed, to the extent Garcia seeks to add new claims, she must file a properly noticed motion seeking leave to do so under Rules 16 and 15 of the Federal Rules of Civil Procedure.

DATED: April 8, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE